MICHELE BECKWITH
Acting United States Attorney
KEVIN C. KHASIGIAN
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

APPROXIMATELY $32,000.00 IN U.S. CURRENCY,

Defendant.

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by and through its undersigned attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions:

**NATURE OF ACTION**

1. This is a civil action *in rem* to forfeit to the United States Approximately $32,000.00 in U.S. Currency (hereafter "defendant currency") involved in violations of federal drug laws.

2. The defendant currency was seized from Jonathan Louis Miranda ("Miranda") on November 15, 2023, at the Sacramento International Airport. The defendant currency is in the custody of the U.S. Marshals Service, Eastern District of California.

///

///

## JURISDICTION AND VENUE

3. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, over an action for forfeiture under 28 U.S.C. § 1355(a), and over this particular action under 21 U.S.C. § 881.

4. This district is a proper venue pursuant to 28 U.S.C. § 1355 because the acts giving rise to this *in rem* forfeiture action occurred in this district, and pursuant to 28 U.S.C. § 1395 because the defendant currency was seized in this district.

## FACTUAL ALLEGATIONS

5. On November 15, 2023, Miranda traveled on Delta Airlines from Newark, New Jersey to Sacramento, California, with a layover in Atlanta, Georgia. Law enforcement in Sacramento received information concerning Miranda's cross-country travel that they believed was suspicious, including Miranda's drug-related criminal arrests and his purchase of an airline ticket days prior to his flight. Miranda also checked just a single bag for the cross-country flight.

6. Prior to Miranda's plane arriving in Sacramento on November 15, 2023, law enforcement responded to the Sacramento International Airport and observed Miranda's checked bag in the Delta Airlines outdoor baggage drop-off area for Miranda's flight. While the luggage was in the drop-off area, a drug detection dog alerted to the odor of narcotics on Miranda's checked luggage. Following the positive alert by the trained drug detection dog, law enforcement brought the bag into the indoor baggage carousel for Miranda's flight. In the baggage carousel area, law enforcement observed Miranda holding two carry-on bags—a backpack and satchel. Miranda noticed law enforcement in the baggage area—apparently with full knowledge that law enforcement seized his checked bag—and immediately departed to a baggage carousel area associated with a different flight. During his walk away from his own baggage carousel area, Miranda twice peered at law enforcement before leaving the baggage claim area and exiting the airport.

7. Outside the airport, law enforcement approached Miranda and asked if he was "Mr. Miranda." Miranda confirmed he was "Jonathan Miranda." Law enforcement told Miranda they had his checked bag inside the terminal and that a drug detection dog positively alerted for the odor of narcotics to his bag. Law enforcement asked Miranda if he would return inside the terminal to discuss

the contents of his bag. Miranda agreed. Law enforcement then asked Miranda for consent to search the bag—Miranda agreed to a voluntary search of his bag. While Miranda's checked bag contained minimal items of relevance, law enforcement also asked to search Miranda's carry-on backpack and carry-on satchel. Miranda agreed to the search of each carry-on bag.

8. Law enforcement found stacks of bulk cash in each of Miranda's carry-on bags and asked Miranda how much cash he was traveling with. Miranda initially stated "Maybe, $27,000" and then said, "under $30,000." Law enforcement asked Miranda if he would like to discuss the contents of the bags in a separate room away from passengers. Miranda agreed to accompany law enforcement into a separate room.

9. In the separate room, law enforcement inventoried the contents of the carry-on backpack and carry-on satchel. A search of each carry-on bag—the backpack and satchel—revealed several stacks of rubber band-bound cash, as well as various denominations of loose bills. A later bank count of the cash seized from Miranda's carry-on bags totaled $32,000.00—the defendant currency. The denominations of the seized $32,000.00 cash were comprised of 500 $20 bills, 20 $50 bills, and 210 $100.00 bills.

10. Miranda told law enforcement that the cash in his carry-on bags was earmarked for gambling at Thunder Valley casino just outside of Sacramento. Although he had not booked reservations, Miranda said he was staying at a hotel at the Thunder Valley casino. Miranda claimed to travel at least monthly to Thunder Valley casino to play Blackjack and try his luck with the slot machines. According to Miranda, he earns $1,500.00 to $2,000.00 a week as a truck driver but attributed an unknown portion of the rubber-banded cash as casino winnings. The DEA's investigation revealed that Miranda has gambled a total of $21,662.53 at Thunder Valley Casino since November 2022, losing $17,508.53 of that amount.

11. Following the seizure and while at the airport, a trained drug detection dog positively alerted to the odor of narcotics on the defendant currency.

12. Miranda has a drug-related criminal history, including drug arrests in 2011, 2018, and 2019.

**FIRST CLAIM FOR RELIEF**
**21 U.S.C. § 881(a)(6)**

13. The above paragraphs are incorporated by reference as though fully set forth herein.

14. The defendant currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it was money furnished and intended to be furnished in exchange for a controlled substance or listed chemical, constituted proceeds traceable to such an exchange, and was used and intended to be used to commit or facilitate a violation of 21 U.S.C. §§ 841, *et seq*., an offense punishable by more than one year's imprisonment.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays that:

1. Process issue according to the procedures of this Court in cases of actions *in rem;*

2. Any person having an interest in said defendant currency be given notice to file a claim and to answer the complaint;

3. This Court enter a judgment of forfeiture of the defendant currency to the United States; and,

4. The Court grant such other relief as may be proper.

DATED: 7/10/2025

MICHELE BECKWITH
Acting United States Attorney

By: /s/ Kevin C. Khasigian
KEVIN C. KHASIGIAN
Assistant U.S. Attorney

**VERIFICATION**

I, Richard J. Britt, hereby verify and declare under penalty of perjury that I am a Special Agent with the U.S. Drug Enforcement Administration, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the Drug Enforcement Administration.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: 7-10-2025

/s/ Richard J. Britt
RICHARD J. BRITT
Special Agent
Drug Enforcement Administration

(Signature retained by attorney)