MICHELE BECKWITH
Acting United States Attorney
KEVIN C. KHASIGIAN
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | 2:25- CV-01943-AC |
|---|---|
| Plaintiff, | |
| v. | ORDER REGARDING CLERK'S ISSUANCE OF WARRANT FOR ARREST OF ARTICLES *IN REM* |
| APPROXIMATELY $32,000.00 IN U.S. CURRENCY, | |
| Defendant. | |

WHEREAS, a Verified Complaint for Forfeiture *In Rem* has been filed on July 10, 2025, in the United States District Court for the Eastern District of California, alleging that the defendant Approximately $32,000.00 in U.S. Currency (hereafter "defendant currency") is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) for one or more violations of 21 U.S.C. §§ 841, *et seq.*;

And, the Court being satisfied that, based on the Verified Complaint for Forfeiture *In Rem* and the affidavit of Drug Enforcement Administration Special Agent Richard J. Britt, there is probable cause to believe that the defendant currency so described constitutes property that is subject to forfeiture for such violation(s), and that grounds for the issuance of a Warrant for Arrest of Articles *In Rem* exist, pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

1

Order Re Clerk's Issuance of Warrant for Arrest

1  IT IS HEREBY ORDERED that the Clerk for the United States District Court, Eastern District
2  of California, shall issue a Warrant for Arrest of Articles *In Rem* for the defendant currency.

3

4  Dated: July 14, 2025

<br>ALLISON CLAIRE
<br>UNITED STATES MAGISTRATE JUDGE

**AFFIDAVIT OF RICHARD J. BRITT**

I, Richard J. Britt, being duly sworn under oath, depose and state the following:

1. I am a Special Agent employed by the U.S. Drug Enforcement Administration ("DEA") and have been so employed since April 2005.

2. I was trained as a DEA Special Agent at the DEA/FBI Academy, Quantico, Virginia. During my training, I received special training in the Controlled Substance Act, Title 21 United States Code, including, but not limited to, Sections 841(a)(1) and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations respectively.

3. I have received special training regarding criminal organizations engaged in conspiracies to manufacture and/or possess with intent to distribute methamphetamine, cocaine, cocaine base, heroin, marijuana, and other dangerous drugs prohibited by law. I received further training in search and seizure law and many other facets of drug law enforcement. I have received specialized formal training in clandestine laboratory investigations and safety procedures during a 40-hour course at the DEA Academy, Quantico, Virginia. This training involved, but was not limited to: clandestine laboratories, identification of chemicals and other hazardous materials used in the manufacture of methamphetamine, familiarization with equipment and apparatus used in the clandestine laboratory processing. I have also spoken to and worked with experienced federal, state, and municipal narcotic officers regarding the methods and means employed by drug manufacturers and drug traffickers. I have attended a 24-hour Internet Telecommunications Exploitation Program in San Francisco, California. This training involved, but was not limited to: learning updated trends of criminal organizations abilities to more effectively protect themselves from Title III wire interceptions and methods of infiltrating criminal organizations utilizing the Internet. I have attended a one week training conference in Las Vegas, Nevada, dealing primarily with Asian gang culture. This training conference involved, but was not limited to: Asian gang crime within the United States and throughout the world, current trends that Asian gangs are utilizing to launder drug proceeds, the use of casinos for Asian gangs to facilitate drug transactions and large scale credit card fraud, and Asian culture and customs.

4. During the course of my employment as a DEA Special Agent, I have participated in a number of criminal investigations and have gained knowledge and experience by working with senior

agents. I have participated in federal and state search warrants involving the seizure of the aforementioned listed controlled substances, the seizure of records relating to the manufacturing and distribution of controlled substances, and other types of evidence that document the activities of drug trafficking organizations and its members. To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance and various types of infiltration, including undercover agents, informants, and cooperating sources. Based on these investigations, my training and experience, and conversations with other experienced agents and law enforcement personnel, I have become familiar with the methods used by traffickers to smuggle and safeguard narcotics, distribute narcotics, and collect and launder proceeds from narcotic transactions.

5. I have personally conducted or been involved with the interview of hundreds of individuals suspected of trafficking narcotics and/or narcotics proceeds through mass transit facilities. These interviews and investigations had yielded the seizure of over $20,000,000 in United States Currency. I also now attend an annual conference held at different locations around the country called I.N.I.A, the International Narcotics Interdiction Association which deals primarily with the targeting of individuals utilizing mass transit facilities (airports, trains, freight, etc.) who are using such facilities to transport their narcotics and/or narcotics proceeds domestically.

6. This affidavit is made in support of a warrant for arrest of Approximately $32,000.00 in U.S. Currency ("defendant currency"). The defendant currency was money furnished and intended to be furnished in exchange for a controlled substance or listed chemical, constituted proceeds traceable to such an exchange, and was used and intended to be used to commit or facilitate a violation of 21 U.S.C. §§ 841, *et seq*. As a result of the foregoing, the defendant currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

## FACTUAL ALLEGATIONS

7. The facts in this affidavit are known to me as a result of my personal participation in this investigation, through conversations with other agents and detectives who have participated in this investigation, and from reviewing official reports, documents, and other evidence obtained as a result of the investigation and I have determined the following:

8. On November 15, 2023, Jonathan Louis Miranda ("Miranda") traveled on Delta Airlines from Newark, New Jersey to Sacramento, California, with a layover in Atlanta, Georgia. I received information concerning Miranda's cross-country travel that I believed was suspicious, including Miranda's drug-related criminal arrests and his purchase of an airline ticket days prior to his flight. Miranda also checked just a single bag for the cross-country flight.

9. Prior to Miranda's plane arriving in Sacramento on November 15, 2023, law enforcement responded to the Sacramento International Airport and observed Miranda's checked bag in the Delta Airlines outdoor baggage drop-off area for Miranda's flight. While the luggage was in the drop-off area, a drug detection dog alerted to the odor of narcotics on Miranda's checked luggage. Following the positive alert by the trained drug detection dog, law enforcement brought the bag into the indoor baggage carousel for Miranda's flight. In the baggage carousel area, law enforcement observed Miranda holding two carry-on bags—a backpack and satchel. Miranda noticed law enforcement in the baggage area—apparently with full knowledge that law enforcement seized his checked bag—and immediately departed to a baggage carousel area associated with a different flight. During his walk away from his own baggage carousel area, Miranda twice peered at law enforcement before leaving the baggage claim area and exiting the airport.

10. Outside the airport, law enforcement approached Miranda and asked if he was "Mr. Miranda." Miranda confirmed he was "Jonathan Miranda." Law enforcement told Miranda they had his checked bag inside the terminal and that a drug detection dog positively alerted for the odor of narcotics to his bag. Law enforcement asked Miranda if he would return inside the terminal to discuss the contents of his bag. Miranda agreed. Law enforcement then asked Miranda for consent to search the bag—Miranda agreed to a voluntary search of his bag. While Miranda's checked bag contained minimal items of relevance, law enforcement also asked to search Miranda's carry-on backpack and carry-on satchel. Miranda agreed to the search of each carry-on bag.

11. Law enforcement found stacks of bulk cash in each of Miranda's carry-on bags and asked Miranda how much cash he was traveling with. Miranda initially stated "Maybe, $27,000" and then said, "under $30,000." Law enforcement asked Miranda if he would like to discuss the contents of the bags in a separate room away from passengers. Miranda agreed to accompany law enforcement into a separate

room.

12. In the separate room, law enforcement inventoried the contents of the carry-on backpack and carry-on satchel. A search of each carry-on bag—the backpack and satchel—revealed several stacks of rubber band-bound cash, as well as various denominations of loose bills. A later bank count of the cash seized from Miranda's carry-on bags totaled $32,000.00—the defendant currency. The denominations of the seized $32,000.00 cash were comprised of 500 $20 bills, 20 $50 bills, and 210 $100.00 bills.

13. Miranda told law enforcement that the cash in his carry-on bags was earmarked for gambling at Thunder Valley casino just outside of Sacramento. Although he had not booked reservations, Miranda said he was staying at a hotel at the Thunder Valley casino. Miranda claimed to travel at least monthly to Thunder Valley casino to play Blackjack and try his luck with the slot machines. According to Miranda, he earns $1,500.00 to $2,000.00 a week as a truck driver but attributed an unknown portion of the rubber-banded cash as casino winnings. The DEA's investigation revealed that Miranda has gambled a total of $21,662.53 at Thunder Valley Casino since November 2022, losing $17,508.53 of that amount.

14. Following the seizure and while at the airport, a trained drug detection dog positively alerted to the odor of narcotics on the defendant currency.

15. Miranda has a drug-related criminal history, including drug arrests in 2011, 2018, and 2019.

///
///
///
///
///
///
///
///
///

4

Affidavit of Richard J. Britt

16. Based on the foregoing facts, I have probable cause to believe that the defendant currency was intended for the purchase of illegal drugs or is proceeds from drug trafficking. It is respectfully requested that a Warrant for Arrest of Articles *In Rem*, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions Rule G(3)(b)(i), be issued for the defendant currency listed above.

/s/ Richard Britt
RICHARD J. BRITT
Special Agent
Drug Enforcement Administration

Sworn to and signed telephonically on this 14th day of July 2025.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

Reviewed and approved as to form

/s/ Kevin C. Khasigian
KEVIN C. KHASIGIAN
Assistant U.S. Attorney

5

Affidavit of Richard J. Britt